**Rudy CARRERA, Petitioner**

v.

**John ASHCROFT, Attorney General of the United States, Respondent**

No. 02–1429.

United States Court of Appeals, Third Circuit.

Jan. 22, 2003.

Before BECKER and McKEE, Circuit Judges, and HILL, Senior Circuit Judge.*

OPINION

McKEE, Circuit Judge.

Rudy Carrera, appeals the decision of the Board of Immigration Appeals ("BIA") affirming the decision of an Immigration Judge ("IJ") denying his request from relief from deportation.

Carrera, a native and citizen of Guatemala, arrived in this country without inspection on January 13, 1991. Thereafter, the Immigration and Nationalization Service placed him into deportation proceedings by charging him under the former INA § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B), for having entered the United States without inspection by immigration officials. Carrera's counsel conceded that Carrera was deportable as charged before an IJ. However, Carrera sought relief from removal in the form of asylum and withholding of deportation under Sections 208 and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1253(h).[1] The IJ denied the requested relief and the BIA affirmed. Carrera then filed this petition for review. For the reasons that follow, we will dismiss the petition for review.

I.

Carrera entered this country without proper immigration documents on January 13, 1991. According to the 1996 asylum application in the administrative record,[2]

---

* The Honorable James C. Hill, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. INA § 243(h) has been recodified in INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), under the sub-heading "restriction on removal."

2. Carrera originally filed an asylum application in 1993. That application was never

Carrera was born on February 13, 1971, in Guatemala. He claimed no spouse or children in the United States or anywhere else in the world. He claimed that he belonged to a political party called Union del Centro Nacional ("UCN") in 1990. It is not clear from the application whether he joined the UCN in 1990 or instead only maintained his membership during 1990. He stated, however, that even people who did not belong to any political groups in Guatemala were kidnaped and killed for "no reason." He also stated in the application that he feared two groups identified as "PAC" and "MAS." He said that in 1987, his father was forced to give food to guerillas (but he did not explain the relevance), and that during the election in 1990, he was "verbally attacked" and "pushed." He also expressed a fear that he might be forced to join PAC, and that if he were to join that organization, there would be physical retribution against him and his wife (although he also stated in the application that he had no spouse). He alleged that he could be killed or tortured "just because [he is] in the country."

The record contains a document entitled: "Guatemala—Profile of Asylum Claims and Country Conditions", that the Department of State's Bureau of Democracy, Human Rights and Labor prepared in 1986 (the "Profile"). According to the Profile, a presidential election was held in Guatemala in 1996 that was "generally judged to have been fair, free and open." The Profile does note that asylum applicants of "Indian" ancestry (not claimed by Carrera) have claimed a variety of types of mistreatment by government military or police forces. The major offenders have allegedly been the civil self-defense units called "Patrullas Autodefensivas Civiles" or "PAC". However, the Profile adds that "only party leaders or high profile activists

generally would be vulnerable" to "harassment resulting from rivalry between political parties." The Profile states that internal relocation is a viable option for those who are fleeing military harassment.

Carrera testified in support of his application for asylum and withholding of deportation. He testified that he was born in Guatemala and that he had three brothers and four sisters. He was purportedly involved in a political party called "UCN." According to his testimony, his party lost in a presidential election and there was a "bad situation." He explained that the bad situation was "not exactly to [him], it was in general, and [he] decided just for that reason to leave and get away from the situation."

He did not answer the IJ's inquiry into whether he held a formal position within the UCN. However, he described his role as "going to the community and talk with ... all the people," and "just try[ing] to convince them why the party was good for ... the country." He also said that the party wanted to offer the poor people new schools and new roads. Carrera testified that the head of the party, Jorge Carpia, was killed in 1996. He acknowledged that although a party called "MAS" was in power when he left Guatemala, the party in power at the time of his hearing, which he identified as "BAN," was a "democratic party" that was popularly elected. He said that he left Guatemala four or five months after the UCN lost the election. He testified that he was not afraid that something might happen to him, but that he was afraid of "just being there." He also said that people who helped Carpia during the election were not killed, but were threatened by the MAS party and had to leave the country. He later testified that the MAS was also popularly elect-

adjudicated by the INS; however, the IJ con-     sidered it along with the 1996 application.

ed to the presidency and a "big amount" of seats in the assembly.

Carrera testified that he lived on the island of Dotsana, and was known as a member of the UCN. When asked whether he or other members of the UCN were hurt or threatened during the five months he remained in Guatemala after the 1990 election, Carrera said that he "cannot prove" that and that he "wasn't sure about it, but it just rumors about it." He engaged in a dialogue with the IJ about the PAC, from which it appears that Carrera was saying that the army used PAC members as informants, and then used the information to target the government's opposition. He testified that the PAC had an official delegate in each of the government departments within Guatemala and that the role of the PAC was to patrol the streets. He admitted that he had not personally had any major confrontation with PAC (or with anyone else) except that during the election, some insults were exchanged and rocks were thrown.

Carrera testified that if he were to return to Guatemala seven years after his departure, he would still be in danger. According to his testimony, "competition" between the political parties still exists in Guatemala, and he claims that he would be forced to join the PAC upon his return. This would allegedly require him to patrol streets, and expose him to harm. However, he does not claim to have any conscientious objections to functioning as a member of the PAC.

Carrera testified that because his party was not in control of the government, he would not be able to obtain a government job, and would have to work for a private company that offers no benefits or paid vacations. He conceded that while he was politically active from 1989 to 1990, he never had any confrontations with rival political groups beyond verbal confrontations.

## II.

INA § 208 gives the Attorney General discretion to grant asylum to a deportable alien. 8 U.S.C. § 1158(a). However, that discretion can only be exercised if the applicant qualifies as a "refugee." *Id.* "Refugee" is defined as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside of any country in which such person last habitually resided, and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant must present some evidence that the alleged persecutors want to punish him "on account of" one of the five protected classifications in order to establish eligibility for asylum. *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

To establish a "well-founded fear of persecution" under the statute, the alien must demonstrate both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 430–31, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The subjective prong requires a showing that the fear is genuine. *Mitev v. INS,* 67 F.3d 1325, 1331 (7th Cir.1995). Determination of an objectively reasonable possibility requires ascertaining whether a reasonable person in the alien's circumstances would fear persecution if returned to a given country. *Chang v. INS,* 119 F.3d 1055, 1065 (3d Cir.1997).

Withholding of deportation is closely related to asylum. However, unlike the asylum provision, the withholding of deportation provision states that the "Attorney General *shall not* deport or return an alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 243(h); 8 U.S.C. § 1253(h) (emphasis added). To succeed on an application for withholding of deportation, the alien must establish by a "clear probability" that his or her life or freedom would be threatened in the proposed country of deportation. *Janusiak v. INS,* 947 F.2d 46, 47 (3d Cir.1991). "Clear probability" means that it is "more likely than not" that an alien would be subject to persecution. *INS v. Stevic,* 467 U.S. 407, 429–30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). The "clear probability" standard is a more rigorous standard than the "well-founded fear" standard for asylum. *Janusiak,* 947 F.2d at 47. Thus, if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation. *Id.*

### III.

Although the IJ praised Carrera's candor during his testimony, the IJ concluded that Carrera did not demonstrate past persecution or a well-founded fear of future persecution necessary to establishing a claim for asylum or withholding of deportation. The IJ found that the record contained no evidence that Carrera was harmed for his political activities and there was no evidence to support a well-founded fear of future persecution because of Carrera's political activities. The UCN was represented in the government even though it lost the presidential election and that the party had always been a legal entity in Guatemala. The IJ recognized that political violence existed in Guatemala, but found no connection between those general conditions and Carrera's fear of persecution. Moreover, the IJ noted that Carrera's father, who had not been forced to be in the PAC, still lived in Guatemala and had not experienced any problems with the PAC or any other group. Although the IJ denied Carrera's claim for relief, the IJ did rule that Carrera could depart voluntarily in lieu of deportation.

On appeal, the BIA concluded that Carrera had not established either that he was a victim of past persecution or that he had a well-founded fear of future persecution. Therefore, the BIA affirmed the IJ's decision essentially for the reasons set forth in the IJ's opinion denying relief. However, the BIA agreed that could depart voluntarily in lieu of deportation if Carrera would agree to depart within thirty days of its order.

This petition for review of the BIA's decision followed.

### IV.

■ We must sustain the BIA's determination if there is substantial evidence in the record to support it. *Abdille v. Ashcroft,* 242 F.3d 477, 483 (3d Cir.2001). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Senathirajah v. INS,* 157 F.3d 210, 216 (3d Cir.1998) (quotation omitted). Under this deferential standard, "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille,* 242 F.3d at 483–84 (citing *INS v. Elias–Zacarias,* 502 U.S. 478, 481 & n. 1,

112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). Because the BIA adopted the IJ's ruling and did not provide an independent analysis of the facts, we review the decision of the IJ as if it were the decision of the BIA. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n. 2 (3d Cir.2001).

## V.

■ Although Carrera's credibility is not in doubt, it is clear from our summary of the testimony before the IJ that substantial evidence supports the IJ's decision. *See Fatin v. INS*, 12 F.3d 1233, 1240 & n. 10 (3d Cir.1993) ("[P]ersecution does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional."); *Desir v. Ilchert*, 840 F.2d 723, 726–27 (9th Cir.1988) (taunting and teasing to not rise to the level of persecution). At no time did Carrera face any harm or threat of harm sufficient to entitle him to relief. Moreover, there is no evidence that he was even known to the MAS; the party that came to power in the 1990 election. Although Carrera stressed the killing of the UCN's presidential candidate, Jorge Carpia, he did not establish any connection between Carpia's killing and any perceived threat to himself.

Carrera did testify to being fearful of returning to Guatemala because of general country conditions, and this is relevant to his burden of establishing fear of future persecution. However, generalized conditions of strife do not support a claim for asylum. *See Bradvica v. INS*, 128 F.3d 1009, 1013 (7th Cir.1997). Moreover, Carrera acknowledged that he would not necessarily be targeted by the opposition. Furthermore, the party that he claimed to fear, the MAS, was no longer in power at the time of the hearing. Rather, the BAN was in power, and Carrera never testified about any problems with that party. *See*

*Janusiak*, 947 F.2d at 48 (holding that fear of persecution in Poland based upon membership of Solidarity was "not reasonable" in light of Solidarity's rise to power). In addition, his speculation that he would not be able to get a desirable government job is clearly no basis for an asylum claim. *Arriaga–Barrientos v. INS*, 937 F.2d 411, 414–15 (9th Cir.1991).

Moreover, Carrera's fear of being persecuted by the PAC does not constitute a well-founded fear of persecution. Mere recruitment by either military or guerilla forces does not constitute persecution on account of a statutorily protected ground. *See INS v. Elias–Zacarias*, 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). As noted above, Carrera never testified that he had any conscientious objection to the PAC.

Finally, the IJ could properly evaluate Carrera's fear in context with the fact that he remained in Guatemala for several months after the MAS won the 1990 election, and that his father—a former PAC member—remains in Guatemala without any apparent problem. *See Castillo v. INS*, 951 F.2d 1117, 1122 (9th Cir.1991) (Fact that alien remained in country unharmed in relevant to "well-founded fear" inquiry); *Cuadras v. INS*, 910 F.2d 567, 571 (9th Cir.1990) (Fact that several members of alien's family remained unharmed in country of alleged persecution undermined probability of persecution).

Carrera cites *Abdulai v. Ashcroft*, 239 F.3d 542, 551 (3d Cir.2001), to support his argument that the BIA should not have required corroboration or documentation of past persecution. However, *Abdulai* is not at all applicable here. Neither the IJ nor the BIA denied Carrera's application based upon a credibility determination. Rather, they concluded that he simply failed to produce sufficient evidence to establish his eligibility for relief under the

INA. *See Youkhanna v. INS,* 749 F.2d 360, 362 (6th Cir.1984) ("[T]he problem is not that [the alien's] testimony was rejected, but rather that the immigration judge did not share [the alien's] conclusion as to what his testimony established.").

## VI.

Accordingly, for all of the above reasons, the petition for review is denied.

## JUDGMENT

This cause came to be heard on the record from the Board of Immigration Appeals and was submitted pursuant to Third Circuit LAR 34.1(a) on November 4, 2002.

On consideration whereof, it is now here ORDERED AND ADJUDGED by this Court that the petition for review is hereby denied.

All of the above in accordance with the opinion of this Court.