887 P.2d 1048

**WESTERN INDUSTRIAL AND ENVIRONMENTAL SERVICES, INC., a Minnesota corporation, Plaintiff–Appellant,**

v.

**KALDVEER ASSOCIATES, INC., a Washington corporation, and Jeffrey A. Arneberg, Defendants–Respondents.**

No. 20764.

Supreme Court of Idaho,
Boise, September 1994 Term.

Dec. 23, 1994.

Ellis, Brown & Sheils Chtd., Boise, for appellant. Allen B. Ellis argued.

Salladay, Harrigfeld & Day, Boise, for respondents. G. Lance Salladay argued.

TROUT, Justice.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

This case arose out of a contractual dispute between Western Industrial and Environmental Services, Inc. (Western), and Hagadone Hospitality Company (Hagadone). Western had been hired by Hagadone to dredge the bottom of Lake Coeur d'Alene so that Hagadone's golf course "floating green" would be able to be moved across the water without the mechanical devices hitting the lake bottom. The contract between Western and Hagadone called for Western to dredge the lake bottom by a certain date so the floating green could be constructed and ready for the grand opening of the Coeur d'Alene golf course. The contract provided that time was of the essence. As part of the agreement, Hagadone was required to provide a holding pond for the dredged water and refuse from the lake bottom. The purpose of the holding ponds and infiltration system was to satisfy environmental laws which prohibited repumping the water and refuse directly back into the lake. Hagadone constructed the holding pond by converting a golf course water hazard according to a design furnished by Kaldveer Associates.

Western commenced work on February 25, 1991. In order to meet the contract completion date of March 17, 1991, Western worked around the clock. There were many delays during the dredging operation. These were caused in part by the inadequate equipment furnished by Western. Another factor which caused delay was the necessity of modifying the holding ponds and infiltration system. Hagadone and Western renegotiated the contract completion date twice and eventually moved it back until March 28, 1991. On March 28, after two extensions, the job was far from being completed and Hagadone notified Western to cease operations and dismissed Western from the job.

Western filed an action against Hagadone claiming breach of the contract between Hagadone and Western, and pursuant to a clause in that contract the case was sent to binding arbitration. Western asserted in its arbitration claim that Hagadone had breached the contract with Western by negligently designing and constructing a defective and inadequate holding pond and infiltration bed causing Western to be unable to perform under the contract, and that Hagadone had breached the contract by wrongfully terminating Western from the project without allowing due time to complete. During the course of the arbitration Western sought damages permitted by the contract for mobilization and demobilization of dredging equipment, 107 hours of down time, pump repairs, job overhead, labor, materials and lost profits on the project. Hagadone counterclaimed as part of the arbitration proceeding seeking damages incurred as a result of Western's breach.

The arbitrator found that Western had breached its contract with Hagadone without any excuse and that, even with the alleged failure of the holding pond and infiltration system, Western would have been unable to complete the contract within the terms of the contract due to its own delays and inadequa-

cies. Thus, the arbitrator made an award for Hagadone of $130,065.51 on its counterclaim based upon the finding that Western had breached its contract with Hagadone. The arbitrator also made an offsetting award to Western of $68,442.52 based exclusively on the express terms of the contract.

Following the arbitration, Western stipulated to the entry of judgment in district court for the difference between the two awards in the sum of $61,622.99. Immediately following the entry of judgment, Western filed a civil lawsuit against Kaldveer. Western alleged professional malpractice and negligence in the design of the holding pond and infiltration beds and sought damages identical to those which had been previously sought against Hagadone in arbitration with an additional amount for attorney fees and damages paid to Hagadone.

In the district court, Kaldveer moved to dismiss the case and alternatively for summary judgment on the grounds that Western's claims were barred by the doctrines of res judicata and collateral estoppel, and that the claimed economic damages were not recoverable under a claim of negligence or professional malpractice. The district court granted Kaldveer's motion for summary judgment finding that both collateral estoppel (issue preclusion) and res judicata (claim preclusion) barred the suit. The district court also found that purely economic damages were not recoverable in a professional negligence case. The suit was thereafter dismissed and it is from that order that Western now appeals.

## II.

### STANDARD OF REVIEW

This Court, when reviewing the grant of summary judgment, reviews all the pleadings, depositions and admissions on file together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. *Harris v. Department of H & W*, 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992); I.R.C.P. 56(c). In doing so we construe all facts liberally in favor of the party opposing the motion, and will draw all reasonable inferences from the record in favor of the non-moving party. *Id.*

## III.

### ISSUES PRESENTED

Western presents the following issues for our determination on appeal:

(1) Were defendants agents of Hagadone so as to justify the invocation of res judicata as a defense?

(2) In the alternative, is Western's status as an agent or independent contractor a material issue of fact not amenable to summary adjudication?

(3) Are "economic damages" a recoverable element of damage in an action arising out of the professional negligence of an engineer?

In the statement of the issues Western does not distinguish between the doctrines of res judicata and collateral estoppel, which have decidedly different applications. *See Diamond v. Farmers Group, Inc.*, 119 Idaho 146, 804 P.2d 319 (1990); *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983). In its briefing, however, Western discusses both doctrines and it is clear that the district court concluded that both applied and both would bar this suit. Because we conclude that the district court was correct in granting summary judgment for Kaldveer on the basis of collateral estoppel, we need not address the other issues presented.

## IV.

### A JUDGMENT BASED UPON AN ARBITRATION AWARD IS A FINAL JUDGMENT

Western contends that because an arbitration proceeding lacks the formal elements of an adjudicatory proceeding, an arbitration award cannot be a final judgment for collateral estoppel purposes and, therefore, Kaldveer may not assert collateral estoppel here as a bar. Under the particular circumstances presented in this appeal, we conclude that there has been a final judgment for the purposes of a collateral estoppel analysis.

■ The Uniform Arbitration Act is found at I.C. §§ 7–901–922. In particular it provides that upon application of a party to an arbitration, the court shall confirm an arbitration award. I.C. § 7–911. Thereafter, § 7–914 provides in pertinent part that, "[U]pon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree." While we have not been called upon previously to determine the binding effect of an arbitration award for the purposes of res judicata or collateral estoppel, we believe that issue is easily determined in this instance based upon a plain reading of the statute. I.C. § 7–914 clearly contemplates that once a judgment is entered by the court after an arbitration proceeding, that judgment is entitled to be treated in all respects as any other judgment. In *Bingham County Comm'n v. Interstate Elec. Co.*, 108 Idaho 181, 182, 697 P.2d 1195, 1196 (Ct. App.1985), the Court of Appeals noted a distinction between an arbitration award and a judgment and cited I.C. §§ 7–911 and 7–914 as the procedure to confirm an arbitration award as a judgment. *Id.* at 182–83, 697 P.2d at 1196–97. The Court of Appeals held that an arbitration award needs the imprimatur of a court, and thereafter becomes a judgment which may be enforced. *Id.* at 183, 697 P.2d at 1197. In the present case, the parties stipulated to the entry of judgment of the arbitration award, and it therefore became a judgment capable of enforcement.

The record in this case demonstrates that adjudicatory procedures were present in the arbitration proceeding. The parties were given notice; they were able to formulate the issues of law and fact in their memos to the arbitrator; they had the right to present evidence and legal arguments; and, most importantly, the arbitration matter was deemed to be a final resolution between the parties. The record further indicates the nature of the claims made by the parties, as well as the findings, conclusions and award of the arbitrator. The judgment entered reflects the ultimate award entered by the arbitrator after the respective awards to Western and Hagadone were offset. Under these circumstances we agree with the dis-

trict court that there has been a final judgment entered from which the courts can determine the applicability of the bar of collateral estoppel.

## V.

## COLLATERAL ESTOPPEL
### (Issue Preclusion)

■ In *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987), we set forth a five-factor test which must be considered in determining whether collateral estoppel will act as a bar: 1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; 2) the issue decided in the prior litigation was identical to the issue presented in the present action; 3) the issue sought to be precluded was actually decided in the prior litigation; 4) there was a final judgment on the merits in the prior litigation; and 5) the party against whom the issue is asserted was a party or in privity with a party to the prior litigation.

As to the first element of collateral estoppel, the record and the decision of the arbitrator demonstrate that Western did have a full and fair opportunity to litigate the issue of whether negligence in the design of the holding pond caused any damages to it which is now the same cause of action asserted against Kaldveer. Basically, Western is now simply trying to get the expectation damages it was not awarded in the arbitration proceeding. In its original complaint against Hagadone, Western asserted that the negligent design of the holding pond prevented it from performing the contract, and thus resulted in its damages. In the civil litigation against Kaldveer, Western again asserts that the negligent design of the pond caused its damages. Western had the opportunity to introduce all evidence and arguments related to its claims about the deficiencies in the holding pond. Admittedly, under the terms of the contract with Hagadone, Western was prohibited from bringing in any other parties to the arbitration and thus could not directly assert claims against Kaldveer. However, in this instance, it is clear that Western had a full and fair opportunity to explore its con-

tentions regarding the defects in the holding pond and infiltration system. Western is now simply choosing to assert those same claims against another party.

The second element of the *Anderson* test has also been satisfied. Western raised the issue of negligence in the arbitration proceeding as a defense and as a reason why it was unable to complete the project in a timely fashion. The arbitrator in the Western/Hagadone arbitration found that, "particularly based on testimony by the contractor itself, that adequate time existed for compliance and fulfillment of the contract in spite of the down time caused by the dewatering system alleged failure to perform." Further, in the present action Western is trying to recover exactly the same damages it was trying to recover in the arbitration proceeding, namely its contractual expectation damages. Since the arbitrator has already decided that Western has suffered no damages because of any alleged negligence, it should not be able to relitigate that issue against Kaldveer.

The third element of collateral estoppel requires that the issue sought to be precluded was actually decided in the prior litigation. In the arbitration proceeding the negligence specifically of Kaldveer was not actually litigated because Kaldveer was not a party to the proceeding. However, the issue sought to be estopped, that is the causation of damages, was clearly litigated by the parties and determined by the arbitrator. The arbitrator concluded that even if there were defects in the dewatering system, that is, defects in the design or construction of the holding pond, Western still would have been unable to perform under its contract. The negligence in the design of the holding pond did not cause Western any damages and this is the same issue sought to be precluded in the litigation against Kaldveer.

The fourth element regarding the existence of a final judgment on the merits has been determined above.

Finally, although one party to this action, Kaldveer, was not a party to the original suit, Kaldveer may still assert the doctrine of collateral estoppel against Western, which was a party in the original action. The test

as set forth in *Anderson* states only that the party *against* whom the plea of collateral estoppel is asserted must have been a party to or in privity with the party in the earlier case. *Anderson v. City of Pocatello,* 112 Idaho 176, 184, 731 P.2d 171, 178 (1987). We have since confirmed that the lack of mutuality of parties is not a bar to the application of collateral estoppel. *Foster v. City of St. Anthony,* 122 Idaho 883, 841 P.2d 413 (1992). Since Kaldveer is asserting collateral estoppel against Western which was a party to the earlier litigation, the final element of the *Anderson* test has been met.

## VI.

## CONCLUSION

We hold that the judgment entered against Western based upon the arbitration award is a final judgment on the merits for the purposes of a collateral estoppel analysis. Further, in this case the elements of collateral estoppel have been met. The district court was correct in granting summary judgment on the basis of issue preclusion and we, therefore, affirm the decision of the district court. Costs to respondents.

McDEVITT, C.J., JOHNSON and SILAK, JJ., and WESTON, J. Pro Tem., concur.