2013 CO 60

**BRISTOL BAY PRODUCTIONS, LLC, f/k/a Crusader Entertainment, LLC, Petitioner**

v.

**Peter LAMPACK; The Peter Lampack Agency, Inc.; Simon & Schuster, Inc.; and Penguin Group USA, Inc., Respondents**

**Supreme Court Case No. 12SC139**

Supreme Court of Colorado.

October 21, 2013

Rehearing Denied November 35, 2013

Lewis Roca Rothgerber LLP, Frederick J. Baumann, Jesús M. Vázquez, Denver, Colorado, O'Melveny & Myers LLP, Marvin S. Putnam, Jessica Stebbins Bina, Los Angeles, California, Attorneys for Petitioner.

Haddon, Morgan and Foreman, P.C., Ty Gee, Denver, Colorado, Attorneys for Respondents Peter Lampack and The Peter Lampack Agency, Inc.

Wheeler Trigg O'Donnell LLP, N. Reid Neureiter, Denver, Colorado, Attorneys for Respondent Simon & Schuster, Inc.

Dorsey & Whitney LLP, Gregory S. Tamkin, Van Aaron Hughes, Denver, Colorado, Attorneys for Respondent Penguin Group (USA), Inc.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, William K. Rounsborg, Greenwood Village, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

CHIEF JUSTICE BENDER delivered the Opinion of the Court.

¶ 1 Bristol Bay Productions, LLC brought claims against author Clive Cussler in California for fraud based on allegations that he had misrepresented his readership figures. Bristol Bay alleged that Cussler misrepresented his readership figures by claiming that he had sold over 100 million books when, in fact, the figure was closer to 40 million. According to Bristol Bay, it was fraudulently induced by Cussler's misrepresentations and reasonably relied on them by purchasing the film rights to Cussler's books and producing an unsuccessful movie based on one of them, *Sahara*, with resulting damages of more than $50 million. In a special verdict, a California jury found that Cussler misrepresented his readership figures and that Bristol Bay reasonably relied on those misrepresentations but that Bristol Bay's reliance on those misrepresentations did not cause its damages.

¶ 2 Meanwhile, Bristol Bay sued Cussler's literary agent and publishers for fraud in Colorado based on the same allegations directed at Cussler in California and based on misrepresentations that Bristol Bay concedes before this court to have been the same: that they had misrepresented Cussler's readership figures by claiming that Cussler had sold over 100 million books. As in California, Bristol Bay alleged that it was fraudulently induced by the misrepresentations and reasonably relied on them by purchasing the film rights to Cussler's books and producing *Sahara.* Again, Bristol Bay alleged damages of more than $50 million.

¶ 3 Following *BristolBay*'s unsuccessful appeal of the California action, the trial court dismissed Bristol Bay's Colorado action under C.R.C.P. 12(b)(5) on issue preclusion grounds for failure to state a claim. The trial court found "no meaningful difference" between the alleged misrepresentations and concluded that Bristol Bay was precluded from bringing the Colorado action because the California jury had determined that Bristol Bay's reliance on the misrepresentations did not cause its damages, irrespective of who made them. The court of appeals affirmed. *Bristol Bay Prods., LLC v. Lampack*, 313 P.3d 674, 2011 WL 5865902 (Colo. App.2011).

¶ 4 We hold that Bristol Bay's Colorado action is barred on issue preclusion grounds because the identity of the defendants in this case is not relevant to the causation element Bristol Bay must prove to prevail on its fraud and fraud-based claims. Because applying issue preclusion is appropriate, we must determine whether the trial court erred by dismissing Bristol Bay's Colorado action under C.R.C.P. 12(b)(5). We hold that the trial court erred by dismissing Bristol Bay's Colorado action under C.R.C.P. 12(b)(5) without converting the defendants' motion to dis-

miss into a motion for summary judgment under C.R.C.P. 56.

¶ 5 Hence, we affirm that portion of the court of appeals' decision applying issue preclusion to bar Bristol Bay's Colorado action, but we reverse that portion of its decision upholding dismissal under C.R.C.P. 12(b)(5) for failure to state a claim. Because C.R.C.P. 56 was the appropriate procedure to resolve this case, Bristol Bay is not liable for attorney fees under Colorado's attorney fee-shifting statute.

## I.  Facts and Procedural History

¶ 6 *Sahara*, a movie starring Matthew McConaughey as master adventurer Dirk Pitt, a character from author Clive Cussler's widely read adventure novels, was released in 2005 with the expectation of becoming a successful movie and eventual film franchise similar to the *Indiana Jones* series. Instead, the movie was plagued by pre-production problems, opened to mostly tepid reviews, and grossed about half of its multi-million-dollar budget. Plans to produce additional Dirk Pitt movies were scrapped. The fallout spawned litigation in California and then Colorado, with Bristol Bay Productions, LLC, which produced *Sahara*, alleging that it was fraudulently induced into purchasing the film rights to Cussler's novels and then producing *Sahara* based on inflated representations of Cussler's readership figures. We begin with the California action.

## The California Action

¶ 7 Bristol Bay Productions, LLC ("Bristol Bay")[1] contracted with Clive Cussler to produce a film of Cussler's novel *Sahara* with an option to produce additional movies based on other Dirk Pitt books. After pre-production began, a dispute arose about the *Sahara* screenplay. Cussler, who retained approval rights over the script, grew increasingly dissatisfied with its progress and began writing his own version. After Bristol Bay refused to use it, Cussler stopped approving screenplay drafts.

¶ 8 Before *Sahara* hit theaters, Cussler sued Bristol Bay in California for breach of contract and other claims because it had failed to secure his approval of the final screenplay. During discovery, Bristol Bay learned that Cussler's readership figures were smaller than it had been led to believe they were: only 40 million, and not 100 million, of Cussler's books had been sold. Bristol Bay then brought claims against Cussler for fraud, alleging that Cussler or Cussler's literary agent Peter Lampack misrepresented Cussler's readership figures and that those misrepresentations induced Bristol Bay to agree to enter the film-rights contract and produce *Sahara* at a loss of more than $50 million.

¶ 9 The California jury returned a special verdict rejecting Bristol Bay's fraud claims. Despite the jury's findings that Cussler misrepresented his readership figures and that Bristol Bay reasonably relied on those misrepresentations, it also found that Bristol Bay's reliance on Cussler's misrepresentations did not cause its damages or losses. Because the jury's special verdict did not provide a reason why Bristol Bay's reasonable reliance did not cause its damages, we are left to speculate that *Sahara* was unsuccessful for reasons other than its reliance on Cussler's misrepresentations of his readership figures.

¶ 10 While the California trial was ongoing but months before the California jury had returned its special verdict, Bristol Bay sued Cussler's agent Lampack and Cussler's publishers, Simon & Schuster, Inc. and Penguin Group (USA), Inc. (collectively, "Publishers"), in Colorado. We turn to the Colorado action now before us.

## The Colorado Action

¶ 11 In Colorado, Bristol Bay sued Lampack and the Publishers based on the same allegations directed at Cussler in California and based on the same misrepresentations he made: that they had misrepresented Cussler's readership figures by claiming that Cussler had sold over 100 million books when, in fact, the accurate figure was closer

---

1.  Bristol Bay was formerly known as Crusader Entertainment, LLC. For clarity, we refer to Bristol Bay by its current name throughout this opinion.

to 40 million. That the misrepresentations alleged in the Colorado action are the same as those alleged in California was conceded by Bristol Bay at oral argument before this court. Bristol Bay alleged that it was fraudulently induced by those misrepresentations and relied on them to determine the breadth of Cussler's fan base, the appropriate purchase price for the film rights, and the money to spend developing, producing, and marketing *Sahara*. Again, Bristol Bay alleged damages of more than $50 million.

¶ 12 After the California jury returned its special verdict, Lampack and the Publishers moved to stay the Colorado action on issue preclusion grounds. They alleged that Bristol Bay was attempting to recover identical damages based on identical issues already litigated in the California action–that misrepresentations about Cussler's readership figures induced it to buy the film rights and to produce *Sahara*. Bristol Bay opposed the motion, and the parties submitted voluminous documents from the California action to support their respective positions, including pleadings, jury instructions, the jury's special verdict, hundreds of pages of trial transcripts, and affidavits from counsel.

¶ 13 Considering this material to address whether the issues were identical, and despite the fact that Bristol Bay's claims were based on the misrepresentations allegedly made by the Publishers rather than by Cussler, the trial court found "no meaningful difference between the content of the misrepresentations of fact alleged here and those presented to the jury in the prior litigation." Given this finding, the trial court reasoned that the identity of the defendant may be relevant to whether Bristol Bay's reliance was reasonable but not to whether Bristol Bay's reliance caused its damages, "a contention which [Bristol Bay] actually litigated and on which it necessarily and demonstrably failed to prevail in the California Action." In

the trial court's view, Bristol Bay "simply failed to convince the California jury that its reasonable reliance on these false representations caused it any injury." Hence, the trial court granted the motion to stay, concluding that issue preclusion would bar Bristol Bay's Colorado action once the California action was affirmed on appeal. *See Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo.2005) (holding that a judgment that is still pending on appeal is not final for issue preclusion purposes).

¶ 14 After the California court of appeals affirmed judgment on Bristol Bay's fraud claims,[2] Lampack and the Publishers moved to dismiss the Colorado action. The trial court, acting through a different judge, granted the motion under C.R.C.P. 12(b)(5) for failure to state a claim. Lampack and the Publishers then sought attorney fees under Colorado's attorney fee-shifting statute, which mandates an award of attorney fees to the prevailing party when a tort action is dismissed under C.R.C.P. 12(b). *See* § 13–17–201, C.R.S (2013).

¶ 15 Bristol Bay appealed to the court of appeals, which affirmed the trial court's order. The court of appeals reasoned that the California jury's factual finding that Bristol Bay's reasonable reliance on Cussler's misrepresentations did not cause its damages barred Bristol Bay "from arguing that reliance on anyone's misrepresentation about the number of Cussler's books sold caused its losses." The court of appeals also affirmed the propriety of dismissal under C.R.C.P. 12(b)(5) for failure to state a claim, thereby subjecting Bristol Bay to liability for attorney fees.

¶ 16 Bristol Bay then petitioned this court for certiorari review of the court of appeals' decision.[3] We begin with a discussion of issue preclusion.

---

**2.** *See Cussler v. Crusader Entm't, LLC*, No. B208738, 2010 WL 718007 (Cal.Ct.App. Mar. 29, 2010).

**3.** We granted certiorari to consider:
1. Whether proximate cause is necessarily an actor-specific inquiry reserved for the jury, or can a court hold that a previous finding that one actor did not cause a plaintiff's

harm preclude plaintiff from later arguing that a different actor caused that same harm.
2. Whether a trial court, before granting a motion to dismiss based on the affirmative defense of issue preclusion, must first convert the motion to one for summary judgment.

## II. Issue Preclusion

[1, 2] ¶ 17 Issue preclusion, also known as collateral estoppel, presents a question of law that we review de novo. *Stanton v. Schultz*, 222 P.3d 303, 307 (Colo.2010). It bars relitigation of an issue that is identical to an issue that has been actually litigated and necessarily adjudicated in a prior proceeding. *Id.* Although easy to recite in principle, one of the most difficult issue preclusion questions "is to delineate the issue on which litigation is, or is not, foreclosed by the prior judgment." Restatement (Second) of Judgments, § 27 cmt. c (1982); *see also* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4417, at 414 (2d ed.2002). We must confront this question to resolve this case.

¶ 18 The Publishers argue that Bristol Bay is precluded from bringing the Colorado action.[4] They contend that the Colorado action requires Bristol Bay to relitigate an issue that was decided adversely to it in California—that Bristol Bay's reliance on misrepresentations of Cussler's readership figures caused its damages. Bristol Bay argues that the issues are not identical because causation is always an actor-specific question for the jury and the Colorado defendants are different from the California defendant. In Bristol Bay's view, the presence of different defendants requires reversal of both lower courts' rulings.

■ ¶ 19 We begin our discussion by examining our precedent. Although we have not yet addressed an identity-of-issue question that has presented much difficulty, we find persuasive an approach that focuses on the elements of the claims at issue. Turning to the claims in this case, we examine the elements of Bristol Bay's fraud claims in both California and Colorado to determine whether the identity of the defendant is relevant to the causation element of the fraud and fraud-based claims in this case. After examining the causation element in detail, assuming reasonable reliance by Bristol Bay and recognizing that Bristol Bay alleges identical reliance on substantially identical misrepresentations to those alleged in California, we conclude that the identity of the defendants is not relevant in this case. Applying this conclusion, our review of the California jury's special verdict requires us to hold that Bristol Bay's Colorado action is barred on issue preclusion grounds.

### Identity of Issues

¶ 20 Our precedent reflects that we have not yet confronted an identity-of-issue question that has presented much difficulty in application. In most cases, the issue raised in a later proceeding is found to be the same, or not to be the same, as the issue decided in the first proceeding without in-depth analysis. *See, e.g., In re Tonko,* 154 P.3d 397, 405–06 (Colo.2007) (holding that the water rights issue raised by the applicants was not identical to the issue raised in an earlier condemnation proceeding); *see also* 18 Wright et al., *Federal Practice and Procedure* § 4417, at 414.

¶ 21 In *Stanton v. Schultz,* we considered whether a plaintiff was barred from suing his lawyer for malpractice because he had already brought a postconviction motion for a new trial based on new evidence. *Stanton,* 222 P.3d at 305. To determine whether the plaintiff was precluded from bringing his legal malpractice claim, we compared the elements the plaintiff needed to prove to succeed on his postconviction motion to the elements the plaintiff would need to prove to succeed on his legal malpractice claim. *Id.* at 307. To prevail on his postconviction motion, the plaintiff had to prove that the result of his trial would have been different if the new evidence had been presented. *Id.* at 307. Likewise, to prevail on his legal malpractice claim, the plaintiff would have had to prove that the result of his trial would have been different if his attorney had presented that new evidence. *Id.* Comparing these elements, we concluded that the plaintiff's legal malpractice claim and the plaintiff's postconviction motion required him to prove an identical causation element. *Id.* at 307–08.

---

4. Bristol Bay sought certiorari review of the court of appeals' issue preclusion holding as it relates to the Publishers only.

¶ 22 *Stanton* addressed the question of whether the elements needed to prove the plaintiff's postconviction motion were identical to those needed to prove the plaintiff's legal malpractice claim. *See id.*; *see also* 18 James W. Moore et al., *Moore's Federal Practice* § 132.02[2][j] (Matthew Bender 3d ed. 2013). In other words, *Stanton* concerned whether two different claims in two different proceedings required the plaintiff to prove an identical legal issue.

¶ 23 This case raises a related but different question. Bristol Bay does not argue that the elements needed to prove its claims in the Colorado action are different from those it needed to prove in the California action, nor does it argue that the Publishers' alleged misrepresentations are different from Cussler's. Rather, Bristol Bay contends that the issues are not identical because of one factual difference—the identity of the Colorado defendants.

¶ 24 The basic tenet that issue preclusion applies only to identical issues means that a difference in facts may change the issue and render issue preclusion inapplicable. 18 *Moore's Federal Practice* § 132.02[2][e]. "[C]hanges in facts essential to a judgment will render [issue preclusion] inapplicable in a subsequent action raising the same issues." *Montana v. United States*, 440 U.S. 147, 159, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). A change in facts may render issue preclusion inapplicable in one context but not in another—the question is whether the change in facts matters in light of the elements needed to prove a party's claims. *See* 18 *Moore's Federal Practice* § 132.02[2][e] (noting that whether a factual distinction is relevant necessarily depends on the governing law); *see also Reynolds v. Cotten*, 2012 CO 27, ¶ 11, 274 P.3d 540 (stating that whether an issue is identical to another "will invariably involve matters of law and logic, rather than credibility and fact-finding").

¶ 25 Thus, the question of whether the issues are identical turns on whether the identity of the Colorado defendants is relevant in light of the elements Bristol Bay must prove to prevail on its fraud and fraud-based claims in this case. *See* 18 *Moore's Federal Practice* § 132.02[2][e]. To address this question, we examine the elements of fraud in both California and Colorado in greater detail.

### The Elements of Fraud

¶ 26 There is no dispute that the elements of fraud in California and Colorado are identical in all substantive respects.[5] We have typically stated that a plaintiff seeking to prevail on a fraud claim must establish five elements: (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff. *Vinton v. Virzi*, 2012 CO 10, ¶ 15, 269 P.3d 1242. For ease of understanding, Colorado's Model Jury Instructions unpack the fifth element into its three discrete sub-parts, requiring the plaintiff to prove separately actual reliance, the reasonableness of that reliance, and that the plaintiff's reliance caused its damages. CJI–Civ. 19:1 (2013) (listing the seven elements of a fraud claim).

¶ 27 Tracking these elements, we may assume that Bristol Bay could persuade a Colorado jury that the Publishers made a false representation of a material fact, that the Publishers knew the misrepresentation was false, that Bristol Bay was unaware that the misrepresentation was false, that the Publishers intended Bristol Bay to act upon the misrepresentation, that Bristol Bay did act upon the misrepresentation by relying on it in some fashion, and that its reliance was reasonable. By their terms, several of these elements are defendant-specific, such that

---

**5.** In its amended Colorado complaint, Bristol Bay brought claims against the Publishers for fraudulent misrepresentation, fraudulent concealment, conspiracy to commit fraud, and a claim under the Colorado Consumer Protection Act, sections 6–1–101 to –1121, C.R.S. (2013), for engaging in "deceptive trade practices" based on their alleged misrepresentations. We provide the elements for fraudulent misrepresentation only, as the elemental differences for Bristol Bay's other claims are not pertinent to our analysis.

the identity of the defendant may matter for issue preclusion purposes depending on the facts of the case. For example, whether Bristol Bay's reliance was reasonable may depend, at least in part, on the identity of the defendant. Common sense suggests that Bristol Bay's reliance would tend to be perceived as more reasonable depending on whether the misrepresentations originated from a trusted source. Still, assuming the reasonableness of its reliance, Bristol Bay must establish causation: that its reliance caused damages.

¶ 28 Turning to the causation element, the Publishers contend that the identity of the defendant never matters when determining the cause of damages for fraud because the causation question turns on whether the plaintiff's *reliance* caused its damages, not on whether a defendant's misrepresentations caused them. That is, because the causation element is framed in terms of a plaintiff's reliance—assuming the plaintiff relied and that the reliance was reasonable—the causation inquiry is divorced from the misrepresentations themselves and their alleged source. Thus, in the Publishers' view, the identity of the defendant is irrelevant to the causation element. There is some allure to the logic of this argument, and our precedent and Colorado's Model Jury Instructions appear to support it. *See Morrison v. Goodspeed*, 100 Colo. 470, 478, 68 P.2d 458, 462 (1937) (noting that a plaintiff must prove "[a]ction on the representation or concealment resulting in damage" to prevail on a fraud claim); CJI–Civ. 19:1 (2013) (requiring findings that the plaintiff's "reliance caused [injuries, damages, or losses] to the plaintiff"); *see also* Restatement (Second) of Torts §§ 546, 548A cmt.a (1977) (stating that a plaintiff's justifiable reliance must be "a substantial factor in determining the course of conduct that results in his loss" and causation is "a matter of the recipient's reliance in fact upon the misrepresentation in taking some action or in refraining from it"); 2 Fowler V. Harper et al., *Harper, James and Gray on Torts* § 7.13, at 548 (3d ed. 2006)

(noting that whether a "defendant's misconduct has in fact caused plaintiff any damage ... is frequently presented as a problem of 'reliance' on the part of the plaintiff on the misrepresentation").

¶ 29 Given the facts of this case, however, we need not adopt the Publishers' all-or-nothing position to resolve the issue preclusion question presented here. In both the California action and the Colorado action, Bristol Bay brought fraud and fraud-based claims based on the same allegations: that inflated representations of Cussler's readership figures induced it to agree to enter a film-rights contract and to produce Sahara. Bristol Bay's allegations are founded on substantially identical misrepresentations that the Publishers, like Cussler, misrepresented Cussler's readership figures by claiming he had sold over 100 million books when, in fact, the accurate figure was closer to 40 million. And Bristol Bay has alleged identical reliance and identical damages in both actions.

¶ 30 That Bristol Bay's allegations involve the same misrepresentations was conceded at oral argument.[6] Bristol Bay also made clear that its issue preclusion argument was not based on any perceived difference in the substance of the misrepresentations themselves but was instead based solely on the fact that its allegations were directed at different defendants: "[Bristol Bay is] not arguing that the different statement is the reason why we get to bring our claims in this case. We are arguing that it is a different set of defendants who stand in a different position with respect to a company like Bristol Bay." According to Bristol Bay, its allegations in Colorado could involve the "same misrepresentations" based on "evidence [that] might be exactly the same" as that presented in the California action, but the presence of different defendants nevertheless renders application of issue preclusion inappropriate.

¶ 31 In California and Colorado, Bristol Bay has claimed that it relied on the misrepresentations by agreeing to enter into a film-

---

**6.** Bristol Bay conceded during oral argument that the misrepresentations in both actions were the same: "For purposes of this argument, [Bristol Bay] concede[s] that it is a similar claim that we are seeking to assert against the Publishers as the misrepresentation claim against Clive Cussler."

rights contract and producing *Sahara*, and, in both actions, Bristol Bay has alleged resulting damages of more than $50 million. Thus, the causation inquiry is identical in this case.

¶ 32 To counter this logic, Bristol Bay argues that causation is always an actor-specific question for the jury, relying on the case of *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980). *Kulik* involved a plaintiff who sued three companies for negligence after a boiler exploded because of a plugged release valve. *Id.* at 315. The plaintiff alleged that the companies should have noticed and fixed the faulty valve while doing other repair work. *Id.* at 315–16. At trial, one company, Metropolitan, moved for a directed verdict, which the trial court granted. *Id.* at 316. The plaintiff's claims against the two other companies were submitted to the jury, and the jury returned verdicts in the companies' favor. *Id.* On appeal by the plaintiff, the court of appeals reversed the directed verdict, and Metropolitan sought certiorari review. *Id.* at 316–17. After affirming the court of appeals' holding that the trial court erred by directing a verdict in Metropolitan's favor, we addressed Metropolitan's argument that any error was harmless because the plaintiff had relied on the same theory of liability against the two remaining companies, which the jury had found not liable. *Id.* at 318, 319. We held that issue preclusion did not bar the plaintiff from relitigating his negligence claim against Metropolitan because it was "dissimilar in fact and law" to the plaintiff's negligence claims against the other two companies. *Id.* at 319.

¶ 33 *Kulik* is consistent with our analysis. In *Kulik*, the plaintiff's claim against Metropolitan was dissimilar in fact because Metropolitan's services were performed on differ-

ent days and involved distinct projects, and the plaintiff's claim was dissimilar in law because Metropolitan's breach of duty on the day it provided services may have caused the injury irrespective of the other companies' conduct that the jury found to be not negligent. In contrast, here, Bristol Bay brought identical allegations based on substantially identical misrepresentations, and it alleged identical reliance and identical resulting damages. Thus, Bristol Bay's claims were not "dissimilar in fact and law." *See id.*

¶ 34 Hence, we conclude that the identity of the defendants in this case is not relevant to the causation element Bristol Bay must prove to prevail on its fraud and fraud-based claims.[7]

### Application

¶ 35 We begin by emphasizing that Bristol Bay's Colorado action is based on identical allegations concerning substantially identical misrepresentations to those alleged in California and with identical resulting damages. And we may assume that Bristol Bay could persuade a Colorado jury that it relied on those substantially identical misrepresentations and that its reliance was reasonable. However, Bristol Bay must still prove causation: that its reliance caused the damages.

¶ 36 Turning to the California jury's special verdict tracking the elements of fraud, the jury found that Bristol Bay reasonably relied on Cussler's misrepresentations but that its reliance did not cause the alleged damages:

> Question No. 39: Did [Bristol Bay] reasonably rely on the representation?
>
> Answer: Yes.
>
> Question No. 40: Was [Bristol Bay's] reliance on Cussler's representation a sub-

---

7. Bristol Bay also cautions against applying issue preclusion in this case because it raises the possibility of inconsistent jury verdicts whenever damages are apportioned in unequal amounts, relying on a case by a division of the court of appeals, *H & H Distributors, Inc. v. BBC International, Inc.*, 812 P.2d 659 (Colo.App.1990). In that case, the jury found that two defendants committed fraud, but it awarded damages against one defendant only. *Id.* at 661. Holding that the jury verdict was consistent, the court of

appeals stated that "the jury could have found that [one defendant] acted fraudulently in its own right, causing damages, while [the other defendant's] fraudulent activities did not cause any damage." *Id.* at 664. As our analysis makes clear, the identity-of-issue question is necessarily case-specific, depending on the unique procedural, factual, and legal context of the two actions, such that the problem envisioned by Bristol Bay is unlikely to occur. *See* 18 *Moore's Federal Practice* § 132.02[2][j][i].

stantial factor in causing harm to [Bristol Bay]?

Answer: No.

¶ 37 Despite the California jury's finding that Bristol Bay reasonably relied on Cussler's materially false representations, the jury nevertheless found that Bristol Bay's reliance on them did not cause its damages. In other words, the California jury found that Bristol Bay's damages were caused by something other than its reliance on misrepresentations about Cussler's readership figures, and we are left to speculate that *Sahara* was unsuccessful for other reasons. *See* 2 Harper et al., *Harper, James and Gray on Torts* § 7.13, at 549 (noting the possibility that a plaintiff's damages may result "from causes other than his reliance"). Assuming Bristol Bay could persuade a Colorado jury that it reasonably relied on substantially identical misrepresentations, Bristol Bay must still prove its reasonable reliance on those misrepresentations caused it damages, which the California jury determined adversely.

¶ 38 We hold that Bristol Bay's Colorado action is barred on issue preclusion grounds because the identity of the defendants in this case is not relevant to the causation element Bristol Bay must prove to prevail on its fraud and fraud-based claims. Hence, we affirm that portion of the court of appeals' decision applying issue preclusion to bar Bristol Bay's Colorado action.

### III. Dismissal Under C.R.C.P. 12(b)(5)

¶ 39 Having concluded that issue preclusion bars Bristol Bay's Colorado action, we next address the appropriate procedure to resolve the case. Bristol Bay argues that the court of appeals erred by affirming the trial court's order dismissing its complaint under C.R.C.P. 12(b)(5). The court of appeals relied on Colorado caselaw and the perceived modern trend in the federal courts to fashion a rule permitting dismissal of an affirmative defense under C.R.C.P. 12(b)(5) when the complaint reveals that a claim is barred or where dismissal results in no prejudice to the plaintiff. The court of appeals found that Bristol Bay's complaint did not reveal that its claims were barred but con-

cluded that dismissal under C.R.C.P. 12(b)(5) resulted in no prejudice to Bristol Bay.

¶ 40 In Bristol Bay's view, summary judgment is the appropriate procedure to dismiss its complaint because issue preclusion, as an affirmative defense, is not subject to dismissal for failure to state a claim. For support, Bristol Bay relies on our case of *Ruth v. Department of Highways,* 153 Colo. 226, 385 P.2d 410 (1963), for the proposition that the affirmative defense of issue preclusion cannot be a basis for dismissal under C.R.C.P. 12(b)(5). Lampack and the Publishers counter that dismissal under C.R.C.P. 12(b)(5) is proper because the availability of issue preclusion was apparent from Bristol Bay's complaint and the record materials of the California action. They rely on federal authority that permits dismissal when the allegations in the complaint establish the existence of an affirmative defense and argue that *Ruth* is consistent with this modern trend. Emphasizing the importance of the parties' arguments is the operation of Colorado's attorney fee-shifting statute, section 13–17–201, which mandates an award of attorney fees to the prevailing party when a tort action is dismissed under C.R.C.P. 12(b).

¶ 41 An affirmative defense, such as issue preclusion, is typically raised in an answer, not in a motion to dismiss. C.R.C.P. 8(c); *see also Markoff v. Barenberg,* 149 Colo. 311, 313, 368 P.2d 964, 965 (1962) (affirmative defenses under C.R.C.P. 8 "cannot be raised by motion but only by answer"). This is so because a plaintiff has no obligation to anticipate an affirmative defense in the complaint and include allegations intended to negate it. *Citizens State Bank v. Nat'l Sur. Corp.,* 199 Colo. 497, 500, 612 P.2d 70, 72 (1980); 4 Sheila K. Hyatt & Stephen A. Hess, *Colorado Civil Rules Annotated* 145 (2005). If the rule were otherwise, then it would run afoul of the pleading standard embodied by C.R.C.P. 8, which requires that a plaintiff plead only a "short and plain statement of the claim showing that the pleader is entitled to relief." C.R.C.P. 8(a)(2). It would also place on the plaintiff the burden of pleading facts intended to negate an anticipated affirmative defense as an essential element of the plaintiff's claim. In keeping with

this principle, several of our cases have stated that an affirmative defense cannot be asserted in a C.R.C.P. 12(b)(5) motion but instead must be pleaded in an answer or in a motion for summary judgment.[8]

¶ 42 *Ruth* addressed the method by which an affirmative defense could be sustained. *Ruth,* 153 Colo. at 229, 385 P.2d at 411–12. In that case, we held that the affirmative defense of issue preclusion or claim preclusion can be sustained by facts adduced at trial, by uncontroverted facts presented in a motion for summary judgment, or by a motion to dismiss that, "on the basis of facts properly presented outside of the pleadings," is converted into a motion for summary judgment. *Id.* at 229, 412, 385 P.2d 410.

¶ 43 The parties dispute *Ruth*'s meaning. Bristol Bay reads *Ruth* as providing the exclusive methods by which to sustain an affirmative defense, interpreting the case to hold that an affirmative defense may never be decided on a motion to dismiss without conversion. Lampack and the Publishers focus on *Ruth*'s "outside of the pleadings" language, contending that *Ruth* did not decide whether a motion to dismiss is proper when the existence of the affirmative defense is apparent from the face of the complaint— that is, when its existence is apparent from facts that are not "outside of the pleadings." They argue that federal authority is consistent with their interpretation.

¶ 44 Turning to federal authority, the cases appear relatively uniform that a complaint in federal court is subject to dismissal for failure to state a claim when the "allegations indicate the existence of an affirmative defense that will bar the award of any remedy." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 708 (3d ed.2004). For example, if the allegations in the complaint show that relief is barred by the applicable statute of limita-

tions, "the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense." *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). This exception to the general rule that affirmative defenses must be raised in an answer or in a motion for summary judgment appears to stem from the uncontroversial principle that a "litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Ind. Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir.2003).

¶ 45 Consistent with this narrow understanding, "the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as a basis for the motion." 5B Wright & Miller, *Federal Practice and Procedure* § 1357, at 708–13; *see also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (limitations defense ordinarily cannot be raised in a motion to dismiss, but "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading"). With limited exceptions, affirmative defenses in federal court must be raised in responsive pleadings or in a motion for summary judgment, not in pre-answer motions brought under Fed.R.Civ.P. 12(b). *See U.S. Gypsum Co.,* 350 F.3d at 626; *Worldcom, Inc. v. Graphnet, Inc.* 343 F.3d 651, 657–58 (3d Cir. 2003). We thus read the federal cases to provide for a narrow exception to the general rule that the appropriate vehicle for raising an affirmative defense is in an answer or in a motion for summary judgment. *See Worldcom, Inc.,* 343 F.3d at 657–58.

[5] ¶ 46 *Ruth* is not necessarily in conflict with this narrow exception in every context,[9]

---

8. *See Bailey v. Clausen,* 192 Colo. 297, 300, 557 P.2d 1207, 1209-10 (1976) (statute of limitations); *Bakery & Confectionary Workers' Int'l Union of America (Indep.) Local Union No. 240 v. Am. Bakery & Confectionary Workers' Int'l Union (AFL–CIO) Local Union No. 240,* 165 Colo. 210, 215, 437 P.2d 783, 786 (1968) (res judicata); *Terry v. Terry,* 154 Colo. 41, 43, 387 P.2d 902, 903 (1963) (res judicata).

9. Consider *O'Neill v. Simpson,* 958 P.2d 1121, 1123 (Colo.1998). In that case, we affirmed a water court's dismissal under C.R.C.P. 12(b)(5) by sua sponte applying the doctrine of issue preclusion to bar a plaintiff's fourth successive appeal based on a legal theory he had already advanced in the first action. *See id.* at 1122 ("Once again, O'Neill is before this court attempting to revive the six abandoned water

but conversion is nevertheless required in this case for two reasons. First, assuming *Ruth* permits dismissal on the narrow exception outlined above, the trial court here considered voluminous material from the California action, including pleadings, jury instructions, the jury's special verdict, hundreds of pages of trial transcripts, and affidavits from counsel.[10] The trial court considered this material to determine the facts and issues decided in the California action, to weigh the relevance of any factual or legal differences, and to determine whether Bristol Bay had a full and fair opportunity to litigate. Lampack and the Publishers contend that the trial court took proper judicial notice of the material from the California action, and Bristol Bay does not appear to dispute this contention. Although a trial court may consider certain court records without converting a motion to dismiss into a motion for summary judgment, its power to do so is not unlimited. *See Mun. Subdistrict, N. Colo. Water Conservancy Dist. v. OXY USA, Inc.*, 990 P.2d 701, 711 (Colo. 1999). Without having to address the specific contours of the judicial notice doctrine, a review of the trial court's order reveals that its consideration of the California court records, which included trial transcripts, as well as its consideration of affidavits from counsel, went beyond what is permissible absent conversion to a summary judgment motion. *See Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339 (Colo.1988) ("Because [defendant] attached affidavits and exhibits to its motion, the court properly treated [defendant's] motion as one for summary judgment."); *Walker v. Van Laningham*, 148 P.3d 391, 398 (Colo.App.2006) (holding that the trial court took proper judicial notice of a party's prior criminal convictions and distinguishing the case from one involving

"submission of hundreds of pages of documents, including affidavits"); *see also* 18 *Moore's Federal Practice* § 132.05[7] (the "appropriate vehicle" for raising a preclusion defense is in an answer or in a motion for summary judgment). Because the trial court considered matters outside the pleadings, it was required to convert the motion to dismiss to a motion for summary judgment. *See* C.R.C.P. 12(b)(5).

[6, 7] ¶ 47 Second, conversion is appropriate here because this case involves a tort, which raises the specter of Colorado's attorney fee-shifting statute. The attorney fee-shifting statute is intended to apply only to "a narrow category of baseless tort cases, namely those cases that were so lacking in substance that they could not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *See Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 869 (Colo.2004). Here, Bristol Bay filed its complaint more than a year before judgment was entered in the California action and more than three years before that judgment was affirmed on appeal. At about the time Bristol Bay filed its complaint in the Colorado action, the California action had gone to trial, but the California jury had yet to return its special verdict. On these facts, Bristol Bay's Colorado action does not belong to that "narrow category of baseless tort cases" the statute is intended to curb.

¶ 48 Hence, we hold that the trial court erred by dismissing Bristol Bay's Colorado action under C.R.C.P. 12(b)(5) without converting Lampack and the Publishers' motion to dismiss into a motion for summary judgment under C.R.C.P. 56, and we reverse that portion of the court of appeals' decision holding otherwise. Because C.R.C.P. 56 was the appropriate procedure to resolve this case,

rights by claiming that the water court in *O'Neill I* lacked jurisdiction.... And once again, we reject O'Neill's claims.").

10. The court of appeals excluded from consideration the submission of affidavits because "the district court did not refer to any affidavits in resolving the case." *Bristol Bay Productions, LLC*, 313 P.3d at 686, 2011 WL 5865902, at *12. However, the trial court's order states that it "reviewed and considered the motion papers

and supporting materials." Thus, although the trial court did not reference the affidavits, it stated it considered them. *Compare Finnie v. Jefferson Cnty. Sch. Dist. R–1*, 79 P.3d 1253, 1259 (Colo.2003) (C.R.C.P.12(b)(5) requires conversion "if the court *considers* matters outside the pleadings"), *with Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286, 1290 (Colo. 1992) (noting that conversion is not required where matters outside the pleadings "are submitted but *not considered* by the trial court") (emphases added).

Bristol Bay is not liable for attorney fees under Colorado's attorney fee-shifting statute.

## IV. Conclusion

¶ 49 For the reasons stated, we affirm that portion of the court of appeals' decision affirming the application of issue preclusion to bar Bristol Bay's Colorado action. We reverse that portion of the court of appeals' decision dismissing Bristol Bay's Colorado action under C.R.C.P. 12(b)(5) and remand the case to that court with directions to return it to the trial court for proceedings consistent with this opinion.

Justice RICE dissents, and Justice MÁRQUEZ and Justice BOATRIGHT join in the dissent.

JUSTICE RICE, dissenting.

¶ 50 The doctrine of issue preclusion should not deprive plaintiff Bristol Bay of its opportunity to litigate whether defendants Simon & Schuster and Penguin (collectively "the Publishers") caused Bristol Bay harm by misrepresenting data related to author Clive Cussler's readership, books in print, and books sold.

¶ 51 The final judgment in the California fraud case between Bristol Bay and defendants Cussler and Cussler's agent, Peter Lampack, only determined that Bristol Bay's reliance on misrepresentations made by Cussler himself, and by Cussler through Lampack, were not a "substantial factor in causing harm" to Bristol Bay. The California jury therefore did not resolve the issue of whether Bristol Bay detrimentally relied on the Publishers' misrepresentations.

¶ 52 As such, the issue sought to be precluded by the Publishers is not "identical to an issue actually and necessarily determined in" the California proceeding. *See Reynolds v. Cotten,* 2012 CO 27, ¶ 9, 274 P.3d 540. I therefore respectfully dissent from the majority's holding that the doctrine of issue preclusion bars Bristol Bay from litigating its fraud allegations against the Publishers in

Colorado. Accordingly, I would reverse the court of appeals' issue preclusion decision and remand the case for further proceedings consistent with this opinion.[1]

## I. Facts and Procedural History

¶ 53 The majority provides a detailed recitation of the facts and procedural history underlying this case. The following synopsis is necessary, however, to explain my position that the doctrine of issue preclusion should not bar Bristol Bay from litigating its fraud allegations against the Publishers.

¶ 54 This case arose out of circumstances surrounding the failed film adaptation of Cussler's adventure novel *Sahara.* Bristol Bay sued Cussler and Lampack in California for intentional misrepresentation, among other claims. The Publishers were not parties in the California action. At trial, Bristol Bay argued that Cussler himself and Cussler, through Lampack, intentionally misrepresented the book sales and readership data for the *Sahara* novel to induce Bristol Bay to make the *Sahara* movie.

¶ 55 After the close of evidence, the jury issued a special verdict finding Cussler and Lampack not liable for intentional misrepresentation. It answered specific interrogatories related to Bristol Bay's intentional misrepresentation claim as follows:

Question No. 36: Did Cussler make a false representation of an important fact to [Bristol Bay]?

Answer: Yes

Question No. 37: Did Cussler know that the representation was false, or did he make the representation recklessly and without regard for its truth?

Answer: Yes

Question No. 38: Did Cussler intend that [Bristol Bay] rely on the representation?

Answer: Yes

Question No. 39: Did [Bristol Bay] reasonably rely on the representation?

Answer: Yes

1. I do not discuss the C.R.C.P. 12(b)(5) issue addressed by the majority because reversing the court of appeals on issue preclusion grounds would obviate the need to reach the C.R.C.P. 12(b)(5) question.

Question No. 40: Was [Bristol Bay's] reliance on Cussler's representation a *substantial factor in causing harm* to [Bristol Bay]?

Answer: No

(Emphasis added).

¶ 56 Before the California judgment became final, Bristol Bay filed the fraud and fraud-based claims underlying this appeal in Colorado against the Publishers. Bristol Bay alleged that, like Cussler and Lampack, the Publishers misrepresented Cussler's readership, books in print, and books sold. The Publishers moved the Colorado trial court to stay the case until the California verdict became final on the grounds that the California verdict would preclude Bristol Bay from litigating the misrepresentation issues in Colorado.

¶ 57 After reviewing the record in the California case, the Colorado trial court granted the Publishers' motion to stay. In doing so, the trial court reasoned that Bristol Bay "fully litigated the[ ] misrepresentation issues before the California jury" because the California jury's answers to the special interrogatories demonstrated that Bristol Bay's "reliance upon the false book sales representation did not cause [Bristol Bay] any injuries." After the California verdict became final,[2] the trial court granted the Defendants' C.R.C.P. 12(b)(5) motion to dismiss Bristol Bay's claims against the Publishers on issue preclusion grounds.

¶ 58 The court of appeals affirmed the trial court's dismissal of Bristol Bay's fraud claims against the Publishers. *Bristol Bay Prods., LLC v. Lampack*, 313 P.3d 674, 676–77, No. 10CA2039, 2011 WL 5865902, at *1 (Colo. App. Nov. 23, 2011). It reasoned that if a jury in one case finds that "the defendant's conduct did not cause the plaintiff's damages, this finding would necessarily preclude the assertion that, by contributing to the cause of that same event or act, a second defendant caused the plaintiff's damages." *Id.* at 683, 2011 WL 5865902, at *8 (citing *W. Indus. & Envtl. Servs., Inc. v. Kaldveer Assocs., Inc.*, 126 Idaho 541, 887 P.2d 1048, 1049–52 (1994),

and *Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 459–60, 462 N.Y.S.2d 896 (1983)).

¶ 59 We granted Bristol Bay's petition for certiorari review of the court of appeals' decision.

## II. Analysis

¶ 60 In my view, the doctrine of issue preclusion should not bar Bristol Bay's fraud claims against the Publishers in Colorado because the California jury did not determine whether the Publishers' misrepresentations harmed Bristol Bay. To reach this conclusion, I briefly summarize Colorado's issue preclusion principles in the fraud context and then explain why the doctrine should not bar Bristol Bay's fraud and fraud-based claims against the Publishers.

### A. Issue Preclusion in the Fraud Context

¶ 61 The equitable doctrine of issue preclusion "bars the relitigation of an issue that has been previously decided in another proceeding." *Reynolds,* ¶ 9 (citing *In re Tonko,* 154 P.3d 397, 405 (Colo.2007), and *Sunny Acres Villa Inc. v. Cooper,* 25 P.3d 44, 47 (Colo. 2001)). Of the four elements of this doctrine, only the first element is relevant in this case: whether "the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding." *Id.*

¶ 62 An issue is actually and necessarily determined in a prior proceeding if it "was actually litigated" and "its ultimate determination was in fact necessary to the judgment in that prior action." *Id.,* ¶ 10 (citing *Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 85–86 (Colo.1999)) (original emphasis omitted). "If the identical issue has not actually been determined in a prior action," however, "the analysis need proceed no further" and issue preclusion does not bar the plaintiff's subsequent claim. *Id.* (citations omitted).

¶ 63 The identity of the defendant is highly relevant to any issue preclusion analysis in the fraud context because the first, second,

---

**2.** In an unpublished opinion, the California court of appeals affirmed the trial court's judgment that Bristol Bay "did not suffer any harm from

Cussler's ... intentional misrepresentation." *Cussler v. Crusader Entm't, LLC,* No. B208738, 2010 WL 718007, at *5 (Mar. 3, 2010).

fourth, and fifth elements of fraud are defendant-specific. To prevail on a fraud claim, a plaintiff must establish:

> (1) that *the defendant* made a false representation of material fact;
>
> (2) that *the one* making the representation knew that it was false;
>
> (3) that the person to whom the representation was made was ignorant of the falsity;
>
> (4) that the representation was made with the intention that it be acted upon; and
>
> (5) that the reliance resulted in damage to the plaintiff.

*Vinton v. Virzi*, 2012 CO 10, ¶ 15, 269 P.3d 1242 (emphasis added) (citations omitted).

¶ 64 The first element of fraud requires "that *the defendant* made a false representation of a material fact." *Id.* (emphasis added). A plaintiff must therefore establish more than the general fact that a misrepresentation was made; he must specifically prove that *"the defendant* made" the misrepresentation. *Id.* (emphasis added). For issue preclusion purposes, if the fact finder in the first litigation did not actually and necessarily determine whether a particular defendant made a false representation, then the plaintiff should be permitted to litigate that issue in a second case.

¶ 65 The second and fourth elements of fraud, read together, require *"the one* making the representation" to have intended the plaintiff act in response to a statement the defendant knew was false. *Id.* (emphasis added). Like the first element of fraud, the second and fourth elements are defendant-specific because they speak to a particular defendant's mental state. Thus, if an initial round of litigation fails to actually and necessarily determine whether a certain defendant intended for the plaintiff to rely on that defendant's knowingly false statements, then issue preclusion should not bar the plaintiff from litigating the mental state issue as to that defendant in another action.

¶ 66 Finally, reading the fifth element of fraud in context with the first element demonstrates that the plaintiff must prove that his reliance upon a false representation "the defendant made" caused the plaintiff to suffer injury. *See id.* at ¶ 15. The defendant's identity is highly relevant to determining whether the plaintiff reasonably relied on a misrepresentation because the same statement made by two different defendants could lead the plaintiff to act in different ways. For example, the plaintiff might simply ignore a false statement casually made by someone known for his tendency to exaggerate. Such inaction would not cause the plaintiff to suffer harm. On the other hand, the plaintiff might detrimentally rely on the exact same misrepresentation officially made by a trusted organization. Under these circumstances, the plaintiff's actions could cause the plaintiff damages. Accordingly, issue preclusion should not bar a plaintiff from raising a fraud claim against one defendant in a second action if the fact finder in a previous, but related, action did not actually and necessarily determine whether the plaintiff's reliance on a misrepresentation made by that defendant caused the plaintiff to suffer harm.

¶ 67 With this legal framework in mind, I now turn to the issue preclusion question presented in this case.

### B. Application

¶ 68 The relevant issue in this case is whether the Publishers' misrepresentations caused Bristol Bay harm. The California jury found that neither Cussler nor Lampack's misrepresentations "were a substantial factor in causing harm" to Bristol Bay. It did not actually or necessarily determine whether similar misrepresentations made by the Publishers induced Bristol Bay to act to its detriment. Therefore, issue preclusion should not bar Bristol Bay's fraud and fraud-based claims against the Publishers.

¶ 69 More specifically, and with respect to the elements of fraud discussed above, the California jury did not actually and necessarily determine that the Publishers made a false representation of material fact. Nor did the jury decide that the Publishers intended for Bristol Bay to rely on their knowingly false representations regarding Cussler's book sales. Furthermore, the California jury never addressed whether Bristol Bay relied on any misrepresentations made by the Publishers, nor did it address whether any such reliance caused Bristol Bay to

suffer damages. The Colorado trial court, then, could find that even though Cussler, Lampack, and the Publishers allegedly made nearly identical misrepresentations,[3] the Publishers' misrepresentations caused Bristol Bay to act in a way that resulted in its damages even though the misrepresentations made by Cussler and Lampack did not.

¶ 70 With its narrow finding that Cussler and Lampack's misrepresentations "were not a substantial factor" in harming Bristol Bay, the California jury left the fraud allegations against the Publishers in the underlying Colorado action unresolved. Therefore, the doctrine of issue preclusion should not bar Bristol Bay from bringing its fraud and fraud-based claims against the Publishers.

¶ 71 Additionally, by relying upon two inapposite out-of-state cases[4] instead of relying upon Colorado's basic fraud and issue preclusion principles, the court of appeals below muddles the issue preclusion doctrine for future fraud cases in this state. As stated above, the court of appeals held that if a jury in one case finds that "the defendant's conduct did not cause the plaintiff's damages, this finding would necessarily preclude the assertion that, by contributing to the cause of that same event or act, a second defendant caused the plaintiff's damages." *Bristol Bay,* 313 P.3d at 682–83, 2011 WL 5865902, at *8 (citations omitted).

¶ 72 This conclusion ignores the defendant-specific elements of fraud by lumping the individual actions taken by multiple defendants under the umbrella of a single "event or act" rather than treating those individual actions as distinct components of a greater set of surrounding circumstances. As a result, the holding bars a plaintiff's fraud claims against *all* potential defendants if a fact finder in an initial round of litigation determines that just one of the defendants did not damage the plaintiff. This principle could leave a fraud plaintiff without recourse against a potentially liable defendant simply because the plaintiff could not establish the elements of fraud against someone else, or because the plaintiff sued the wrong defendant first. The majority's holding therefore unduly limits a plaintiff's ability to bring fraud claims against multiple defendants and accordingly conflicts with the issue preclusion principle that ensures "the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue." *See In re Tonko,* 154 P.3d at 405 (citations omitted).

¶ 73 Because issue preclusion should not bar Bristol Bay's fraud and fraud-based claims against the Publishers, I would reverse the court of appeals' decision on the issue preclusion question. I therefore respectfully dissent from the majority's opinion to the extent it affirms the court of appeals' decision on issue preclusion grounds.

I am authorized to state that Justice MÁRQUEZ and Justice BOATRIGHT join in the dissent.

---

3. Whether the Publishers' misrepresentations were in fact identical to those made by Cussler and Lampack remains uncertain due to the procedural posture of the Colorado action. The trial court dismissed Bristol Bay's fraud and fraud-based claims upon the Publishers' C.R.C.P. 12(b)(5) motion. As such, discovery that might reveal the details of the Publishers' misrepresentations has not occurred. Therefore, the majority's conclusion that Bristol Bay's fraud allegations against the Publishers in Colorado were based on "substantially identical misrepresentations" to those considered by the California jury, Maj. op. ¶ 29, has little record support.

4. The two out-of-state cases cited by the court of appeals—*Western Industrial & Environmental Services, Inc. v. Kaldveer Associates, Inc.,* 126 Idaho 541, 887 P.2d 1048, 1049–52 (1994), and *Kret v. Brookdale Hospital Medical Center,* 93 A.D.2d 449, 459–60, 462 N.Y.S.2d 896 (1983)— both involve circumstances in which the fact finders in the relevant first litigations actually and necessarily determined that the plaintiffs could not possibly have suffered harm as a result of any of the alleged conduct. In contrast, the California jury in Bristol Bay's fraud case against Cussler and Lampack only determined that those defendants' misrepresentations were not "a substantial factor in causing harm" to Bristol Bay. This finding left open the possibility that Bristol Bay might have suffered harm by relying on another defendant's similar misrepresentations. Thus, the California jury never preclusively determined that misrepresentations related to Cussler's readership and book sales did not harm or could not have harmed Bristol Bay. As such, the court of appeals improperly analogizes the preclusive jury verdicts in *Western* and *Kret* to the relevant California jury verdict in this case.